[Nos. 36286, 36329.   Department Two.   August 15, 1963.]

CLEM J. REYNOLDS, *Appellant,* v. THE KIRKLAND POLICE COMMISSION, *Respondent.*

GEORGE WILLIAMS, *Appellant,* v. THE KIRKLAND POLICE COMMISSION *et al., Respondents.**

*Reported in 384 P. (2d) 819.

*Torbenson, Thatcher & Stevenson,* by *Robert Stevenson,* for appellant Reynolds.

*Lawrence K. McDonell* (of *Regal & McDonell*), for appellant Williams.

*Kenneth A. Cole* (*Joyce M. Thomas,* of counsel), for respondents.

DONWORTH, J.—This is a consolidated appeal from orders entered by the Superior Court of King County affirming the temporary suspension and permanent demotion of appellants, Chief of Police Clem J. Reynolds and Police Sergeant George Williams, by the Kirkland Police Commission. Dissension within the Kirkland Police Department formed the factual foundation for the action taken against appellants.

The proceedings that led to the orders of the Kirkland Police Commission, which were affirmed by the superior court, present a tangled web, which will be set forth to the extent made possible by the record.

Sometime prior to January 17, 1961, Sergeant Williams was suspended from the Kirkland Police Department (the record does not indicate specifically who suspended him). This suspension was a result of complaints against Sergeant Williams by some of the officers with whom he worked. January 17, 1961, an informal hearing was held before the police commission, where several officers, notably the three other police sergeants on the force, made oral complaints to the commissioners, which Sergeant Williams was given an opportunity to refute. At the conclusion of the testimony, the chairman adjourned the meeting, stating that the commission would weigh the evidence and make a recommendation.

January 26, 1961, the police commission held a meeting attended by the commissioners and Police Chief Reynolds. The chairman stated that they could not find enough evidence to warrant the dismissal of Sergeant Williams. The suspension given was sustained to that date, but the commissioners said they would recommend to the mayor that Sergeant Williams be reinstated. The commissioners also expressed to Chief Reynolds that they believed that he should be able to clear up any trouble within the department, and that he was expected to do so.

The mayor, on January 26, 1961, sent a letter to Chief Reynolds recommending that Sergeant Williams be reinstated and instructing that the recommendation be carried out. Sergeant Williams was reinstated by Chief Reynolds.

February 16, 1961, another meeting of the police commission was held. At that meeting, chairman Wills stated: (1) that the meeting was called to discuss the current morale problem which had existed for the past 6 weeks; (2) that it was his belief that the problem centered around two persons—Chief Reynolds and Sergeant Williams; (3) that the members of the commission had had many discussions on the problem in an attempt to come up with a solution, but to no avail, as the problem was becoming more acute; and (4) that the time had come when the commission had to make a recommendation to the mayor to be carried out to the best of his judgment for the welfare of the police personnel and the city of Kirkland. The chairman called for discussion, whereupon it was moved and seconded that the mayor request the immediate resignation of Chief Reynolds and Sergeant Williams. The three commissioners voted in favor of the motion, and the meeting adjourned.

On this same day, February 16, 1961, the mayor sent separate letters to appellants suspending them and stating in each letter, as the cause for suspension, "We see no other means by which to correct department morale."

Appellants both demanded a hearing by the commission on their respective suspensions.

March 4, 1961, appellants were sent notices entitled, Notice of Hearing and Specification of Charges. The notice

stated that the hearing would be held March 13, 1961, and that it would be "confined to whether such suspension was made for religious or political reasons, or whether it was, or was not, made in good faith for cause."

The notice to Sergeant Williams stated:

"You are further notified that the reasons given for such suspension are as follows:

"1. Incompetency, inefficiency, inattention to or dereliction of duty;

"2. Conduct prejudicial to the morale and respect of fellow officers and conduct subversive to the good order and discipline of the police department;

"3. Other acts or failure to act which, in the judgment of the mayor, and Police Commission are sufficient to show that you are unsuitable to be employed in the public service in the capacity of a sergeant of said police department."

A similar letter was sent to Chief Reynolds. Comparing the reasons given for suspension with those set forth in regard to Sergeant Williams, only the first and third were given (the letter in regard to Chief Reynolds said, "in the capacity of Chief of Police"). These reasons for suspension were given by the police commission 18 days after the suspensions made by the mayor had become effective.

March 9, 1961, some 22 days after the suspensions, appellants were sent, by the police commission, a "Supplemental Specification of Charges," which, by general and specific allegations, purportedly specified in detail the charges which constituted the reasons given in the notices of March 4, 1961.

Sometime prior to the hearing of March 13, the mayor offered to compromise the actions against appellants by reinstating appellant Williams as a patrolman and appellant Reynolds as a sergeant. This was with the approval of the commissioners. The offers were refused.

The hearing, beginning on March 13, 1961, lasted 2 days. At its conclusion, the police commission made findings and affirmed the order of the mayor as modified, such modification being that the suspension was to cease on April 1, 1961, and appellant Williams was demoted to the grade

of patrolman and appellant Reynolds was demoted to the grade of captain.

It is the primary contention of appellants that they were denied a fair hearing and a procedural due process. They contend that the commissioners acted as both accuser and judge; that, after the preliminary investigations, the commissioners had determined the problem and the solution; that the case was prejudged; and that the proceedings after the suspension were only to justify a predetermined result.

In *Yantsin v. Aberdeen,* 54 Wn. (2d) 787, 345 P. (2d) 178 (1959), we held:

"A police officer has no property right in public employment which is protected by the due process clause provisions in our state and Federal constitutions. As said in *Ludolph v. Board of Police Comr's.* (1938), 30 Cal. App. (2d) 211, 216, 86 P. (2d) 118, 121,

" 'The right to an office or of employment with the government or any of its agencies is not a vested property right, and removal therefrom will not support the question of due process.' " p. 788.

Although holding that due process had no applicability, we further stated:

"This is not to say that a police officer does not have rights under civil service that will be protected, but they are only the rights given to him by the legislation creating the civil service system under which he is employed. . . ."

The rights of civil service employees pertaining to their removal, suspension, or demotion include, at least, that the procedure, prerequisites, and conditions set forth in the governing statute, charter, or ordinance be followed. In the instant case, the initial inquiry is what statute, charter, or ordinance governs. Strangely enough, there is no quick answer.

Laws of 1937, chapter 13 is entitled "Civil Service in Police Departments." Section 1 provides:

"The provisions of this act shall have no application to cities and towns which at the present time have provided for civil service in the police department or which shall subsequently provide for civil service in the police depart-

ment by local charter or other regulations which said local charter or regulations substantially accomplish the purpose of this act, nor to cities having a police force of not more than two persons including the chief of police." (RCW 41.12.010)

In *Yantsin v. Aberdeen, supra,* with reference to the city ordinance there in issue, and the above statute, this court stated, at page 791:

"Obviously Aberdeen had provided for civil service in its police department at least five years before the statute was enacted. It is, therefore, not necessary to determine, as in the case of cities which subsequently provided 'for civil service in the police department by local charter or other regulations' whether 'said local charter or regulations substantially accomplish the purpose of this chapter.' "

In May, 1953, the city of Kirkland enacted ordinance No. 643, entitled:

"An ordinance of the city of Kirkland, Washington, creating and establishing a police commission providing for regular meetings thereof, setting its duties and creating and establishing a merit system for the police department of the city of Kirkland, providing grades and fixing a point system for promotion."

The trial court found that "the function of the Police Commission of Kirkland, as constituted, is not inconsistent with the purposes set forth in chapter 41.12, RCW." Error is assigned to this finding.

After a complete reading of RCW chapter 41.12 (Laws of 1937, chapter 13, p. 23), we are of the opinion that its purpose is to establish a civil service system to (1) provide for promotion on the basis of merit, (2) give police officers tenure, and (3) provide for a civil service commission to administer the system and to investigate, by public hearing, removals, suspensions, demotions, and discharges by the appointing power to determine whether such action was or was not made for political or religious reasons and whether it was or was not made in good faith for cause.

Kirkland ordinance No. 643 establishes a merit system for promotion within the police department. It establishes

a police commission which functions in part as a civil service commission. It is with regard to removal, suspension, demotion, and discharge of police officers, and the review thereof, that we now direct our attention.

There are only three sections of the ordinance No. 643 that are concerned with removal, suspension, demotion, discharge of police officers, and review thereof.

"Section 1. That there is hereby established and created a Police Commission to be composed of three members of the Kirkland City Council. This Commission shall sit as a policy board and court of appeals in all matters relating to the Kirkland Police Department. . . .

" . . .

"Section 3. The Police Commission shall meet monthly, the meeting date to be the second Wednesday of every month at 9:00 a.m., or such other place and time as may be decided and designated by the commission. The purpose of such meeting shall be to discuss and explore ways and means of increasing the efficiency and effectiveness of the Kirkland Police Department, and also to hear such complaints as members of the local force may wish to direct to the Commission, *further to consider recommendations for suspension or reprimand as the Chief of Police may bring before the Commission, and to act as a court of last appeal and in all such matters to submit the recommendation on such appeals or action to the Mayor for corrective action.*

" . . .

"Section 10. Any suspension or demotion shall be ordered by the Chief of Police subject to right of appeal by the officer to the Police Commission. Actual discharges from service will be meted out only by the Police Commission after the commission has met and duly considered the charges against the officer in question, and after such officer has had an opportunity to appear and present his case." (Italics ours.)

In our opinion, this ordinance does not substantially accomplish the purpose of RCW chapter 41.12. In regard to the suspension of an officer, it provides, in § 3, for the police commission to consider recommendations for suspension as the chief of police may bring before it, to act as a court of last appeal, and then to submit the recommendations on

such appeals to the mayor for corrective action. Then, in § 10, the ordinance provides that *any* suspension or demotion shall be ordered by the chief of police subject to the right of appeal by the officer to the police commission. This ordinance is clearly inadequate, if not devoid of meaning, in regard to procedure for suspension and review. Furthermore, in this instance, the provision—that any suspension shall be ordered by the chief of police—was impossible to comply with since both Sergeant Williams and Chief Reynolds were suspended at the same time by the mayor.

Just what the commission considered as the governing law is equally confusing. Both the state statute and city ordinance are cited in justification of their action. The suspension ordered by the mayor was of an indeterminate length. The police commission determined the length of the suspension and also demoted appellants. There is no authority for such action, under the provisions of ordinance No. 643, although, under the provisions of RCW 41.12.090, a civil service commission has authority to so modify an order of the appointing power after a hearing on the charges. However, RCW 41.12.010 provides that the chapter shall have no application when, after its enactment, a city shall provide for civil service in the police department by local charter or regulation which substantially accomplishes the purpose of the state statute.

Determining which legislative enactment was applicable must have been a confusing factor in seeking review in the superior court. Both appellants filed notice of appeal to the superior court pursuant to RCW 41.12.090, which would have no application if the provisions of Kirkland ordinance No. 643 were the governing law. In addition, both appellants petitioned for, and received, a writ of review from the court. Yet the court's first finding of fact states:

"These two cases, consolidated, come before this court on appeal from an action of the Police Commission of Kirkland under the provisions of Chapter 41.12 RCW."

The court also made the following finding (to which error is assigned):

"The hearings of March 13 and 14, 1961 were conducted in a manner consistent with procedural due process and in compliance with the provisions of Chapter 41.12, RCW."

Other references to RCW chapter 41.12 are made throughout the findings of fact and conclusions of law.

■ We conclude that the most that can be said for Kirkland ordinance No. 643 is that it attempts to implement the provisions of RCW chapter 41.12 (which are not self-executing) by establishing a police commission and civil service coverage for the police department; but we also conclude that the statute prescribes the governing law herein.

Measured by the procedure for removal, suspension, demotion, or discharge set out in RCW 41.12.090, the proceedings in the instant case do not comply with the statute. Such suspension could only be made upon "written accusations." The statement in the letter of suspension, "We can see no other means by which to correct department morale," is not an accusation. The only accusations came several weeks after the suspension, by the commission itself.

In regard to the investigation by the commission of reasons for suspension *prior to* the hearing, respondent claims that this was the commission's duty under the ordinance. One of the officers who testified at the hearing stated that they had had two or three meetings with the commission. RCW 41.12.090 provides, in part:

"All investigations made by the commission pursuant to the provisions of this section shall be had by public hearing, after reasonable notice to the accused of the time and place of such hearing, at which hearing the accused shall be afforded an opportunity of appearing in person and by counsel, and presenting his defense. . . ."

In examining the procedure in this case, we find that the Kirkland Police Commission conducted investigations, recommended the suspension to the appointing power,[1]

---

[1] Although the minutes of the commission meeting state that the recommendation was that the mayor ask for appellants' resignation, the mayor testified that the suspension of appellants was at the instigation of the police commission and because they recommended suspension.

formulated the accusations against appellants after the suspension itself, and then sat as an appeal board to determine if the action, taken in accordance with its recommendations, was or was not made for political or religious reasons and if it was or was not made in good faith for cause. In addition to performing the above functions, the ordinance provides that the police commission shall sit as a policy board in all matters relating to the Kirkland Police Department, and that such policy or administrative requests as the commission desires shall be issued through the office of the mayor.

It is our opinion that Kirkland ordinance No. 643 does not fully comply with the requirements of RCW chapter 41.12. The civil service system established by the ordinance did not establish a civil service commission to conduct the investigative hearing required by statute, but, rather, established a police commission with inconsistent functions.[2]

The question is raised as to whether Chief Reynolds is entitled to any rights under civil service. The court made a finding of fact that appellant Reynolds did not take or qualify for the position of Chief of Kirkland Police Department by competitive examination as required by the provisions of RCW 41.12.050.

Respondent submitted a proposed conclusion of law, reading:

"Appellant Clem J. Reynolds has not qualified for the position of Chief of the Kirkland Police Department under the state civil service law and may be disciplined, demoted or discharged by the mayor without the limitations of the procedure relating to city police under civil service."

This proposed conclusion of law was stricken by the trial judge. We agree that it would have been error to have entered it. Appellant Reynolds has been a member of the Kirkland Police Department for 17 years, and its Chief

---

[2] This court has held that a county school superintendent who participated in the discharge of a school teacher was disqualified from hearing the appeal by the teacher. We stated that the statute that provided for review by the county superintendent never intended that he should be the accuser and the judge in the same controversy. See *State ex rel. Caffrey v. Superior Court,* 72 Wash. 444, 130 Pac. 747 (1913).

of Police since 1951. RCW chapter 41.12 was enacted in 1937. RCW 41.12.030 provides:

"There is hereby created in every city, town or municipality except those referred to in RCW 41.12.010, having fully paid policemen a civil service commission which shall be composed of three persons.

"The members of such commission shall be appointed by the person or group of persons who, acting singly or in conjunction, as a mayor, city manager, council, common council, commission, or otherwise, is or are vested by law with the power and authority to select, appoint, or employ the chief of a police department in any such city, prior to the enactment of this chapter. . . ."

RCW 41.12.170 provides:

"The various cities affected by the provisions of this chapter, shall immediately upon the taking effect thereof, enact appropriate legislation for carrying this chapter into effect, and the failure upon the part of the duly constituted authorities of any such city so to do shall be considered a violation of this chapter and be punishable as such."

It is apparent that the creation of a civil service commission, with the power to carry out the provisions of the statute, required action on the part of each municipality covered by RCW chapter 41.12. There is no indication that the city of Kirkland attempted to comply with the statute until the passage of ordinance No. 643 in 1953. At this time, appellant Reynolds had been chief of police for 2 years.

Sections 6 and 7 of ordinance No. 643 provide:

"Section 6. *All future Chiefs of Police* shall be selected on a basis of qualification and as a result of competitive examinations. Examinations for Chief of Police shall be conducted under the supervision of the Police Commission and the Mayor shall choose any new Chief of Police from the top three qualifying candidates on such examinations.

"Section 7. *All future promotions* in the Kirkland Police Department in either the Commission or enlisted ranks shall be made on a basis of competitive examinations to be given under the supervision of the Police Commission." (Italics ours.)

We agree with appellant Reynolds that, since he was chief of police at the time ordinance No. 643 was

passed, he was impliedly blanketed under civil service by the city ordinance. This is in keeping with the policy expressed in RCW 41.12.060.[3] We shall not imply a contrary intent on the part of the city council in enacting its ordinance after 16 years of noncompliance with RCW chapter 41.12.

It is our conclusion that neither the initial suspension nor the ultimate demotion of appellants was done in the manner provided by law. The unfairness of the hearing, which appellants have asserted was contrary to due process of law in the constitutional sense, would never have occurred if the procedure prescribed by statute had been followed.

The orders of the superior court affirming the orders of the Kirkland Police Commission are reversed. The superior court is hereby directed to enter an order directing that appellants be restored to their respective positions in the Kirkland Police Department with all the rights and benefits pertaining thereto as of the date they were wrongfully suspended.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

---

January 10, 1964. Petition for rehearing denied.

---

[3] "For the benefit of the public service and to prevent delay, injury, or interruption therein by reason of the enactment of this chapter, all persons holding a position in the police department of any such city, including the chief thereof, when this chapter takes effect, who shall have served in such position for a period of at least six months last past continuously, are hereby declared eligible for permanent appointment under civil service to the offices, places, positions or employments which they shall then hold, respectively, without examination or other act on their part, and not on probation; and every such person is hereby automatically adopted and inducted permanently into civil service, into such office, place, position or employment which such person then holds as completely and effectually to all intents and purposes as if such person had been permanently appointed thereto under civil service after examination and investigation."