[Nos. 48499-1-I; 49299-3-I. Division One. September 16, 2002.]

SEATTLE POLICE OFFICERS GUILD, *Respondent*, DENNIS P. RAMM, ET AL., *Appellants*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

DENNIS L. HOSSFELD, *Appellant*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

433

*William M. Taylor*, for appellant Ramm.

*Jason H. Grover*, for appellant Hossfeld.

*Thomas A. Carr, City Attorney*, and *Paul A. Olsen, Assistant*, for respondents.

APPELWICK, J. — Appellants, police officers who were passed up for promotion by candidates who scored lower on the civil service exam, argue that Seattle's Public Safety Civil Service system grants too much discretion to the Chief of Police in the promotional process. The Supreme Court has held that some degree of discretion in the appointing authority, specifically allowing the Chief of Police to choose from the top three candidates, substantially complies with state law. Seattle's ordinance allows promotion from the top five candidates or top 25 percent of qualified candidates, whichever is greater. We hold that the portion of Seattle's ordinance which allows the Chief of Police to select from the top 25 percent of the candidate pool grants the Chief too much discretion and thus does not substantially accomplish the purposes of state civil service law. The "rule of five," however, does substantially accomplish those purposes. Under the valid "rule of five" provision, as under a valid "rule of three" provision, appellants could have been properly passed over at each opportunity for promotion. Appel-

lants have therefore failed to articulate how they were caused any harm. We affirm.

## BACKGROUND

Since the 1930s, the State of Washington has required municipalities to provide civil service rights for employees of police and fire departments. *City of Yakima v. Int'l Ass'n of Fire Fighters Local 469*, 117 Wn.2d 655, 664-65, 818 P.2d 1076 (1991). Chapter 41.12 RCW establishes a prototype civil service system that communities may use to fill this requirement. A large number of Washington cities simply adopt the procedures and policies contained in chapter 41.12 RCW as their own. Chapter 41.12 RCW requires that the top candidate on the civil service register be promoted. Other cities take a more selective approach, adopting some of the procedures in chapter 41.12 RCW, but enacting provisions unique to the city. Still others, including Seattle, have enacted entire civil service systems pursuant to RCW 41.12.010, which states, in relevant part: "The provisions of this chapter shall have no application to cities and towns which . . . shall . . . provide for civil service in the police department by local charter or other regulations which . . . substantially accomplish the purpose of this chapter . . . ."

In 1978, Seattle instituted a separate civil service system for officers in the police and fire departments. *See* The 1978 City of Seattle Public Safety Civil Service Ordinance, codified at Seattle Municipal Code (SMC) 4.08.010-.210. Section 2 of the ordinance sets forth its purposes as follows:

> The general purpose of this chapter is to establish a civil service system for employees in the Police and Fire Departments of the City, governing appointments, promotions, layoffs, recruitment, retention, classifications, removals and discipline, pursuant to Charter Article XVI, all in substantial compliance with RCW Chapters 41.08, 41.12, 41.56. All appointments and promotions to Police and Fire Department positions, retention therein and removal therefrom shall be made on the basis and policies hereinafter specified as in said state law.

SEATTLE, WASH., ORDINANCE 107791 § 2 (Jan. 1, 1979). The ordinance also establishes Seattle's Public Safety Civil Service Commission (PSCSC) and authorizes it to develop rules and regulations for administration of the civil service system. SMC 4.08.040, .070.

Under the ordinance and the PSCSC rules, the promotional process for police officers begins with a civil service examination. The examination is created, administered and graded by the PSCSC. SMC 4.08.070(c); PSCSC Rule 9. When grading is complete, the PSCSC creates a promotional register that contains the names of all eligible candidates in rank order. PSCSC Rule 10.01. The register indicates each successful candidate's written exam score, oral exam score, "service credit[s]," and total score.[1] As a general rule, the PSCSC conducts examinations every two years, and each promotional register has a two-year life span.

When the police department needs to fill vacancies in the supervisory ranks, the Chief of Police submits a "request for certification" to the PSCSC. PSCSC Rule 11.03. The request identifies the title of the available position and the number of positions available. In response to the request, the PSCSC provides a "certification" which is essentially a list of candidates from which the Chief of Police may select officers to promote. PSCSC Rule 11.05; SMC 4.08.070(F). The number of candidates listed on a certification depends upon the number of positions to be filled. SMC 4.08.070(F). When one position is available, PSCSC certifies at least the top five candidates or 25 percent of the eligibility list, whichever is greater. SMC 4.08.070(F); PSCSC Rule 11.05(c)(1). When multiple positions are available, the PSCSC adds one additional name for each available position. SMC 4.08.070(F); PSCSC Rule 11.05(c)(1).

When filling a position, the Chief of Police must select a candidate from the PSCSC certification. SMC 4.08.070(F). The Chief of Police, however, does not have to promote

---

[1] "Service Credit[s]" reflect only the candidate's length of employment. No discretion is involved in their calculation. See RCW 43.43.120.

candidates in the order in which they appear on the certification. SMC 4.08.110(A). The Chief of Police has discretion to promote any candidate on the certification. SMC 4.08.110(A). Chief of Police Norm Stamper admitted that he viewed the certification as a horizontal plane and used his subjective judgment in making promotions.

## FACTS

Appellant Dennis Hossfeld is a detective with the Seattle Police Department. On August 14, 1993, the Seattle Police Department held an examination for police sergeant. Hossfeld took the examination and received a passing score. The list of eligible sergeant candidates, ranked from 1 to 70, remained effective through December 14, 1995, and 26 promotions were made from this 1993-1995 list. Hossfeld was ranked 28th on the promotion list, but was never promoted.

On December 8, 1998, Hossfeld filed suit against the City of Seattle, Seattle Public Safety Civil Service Commission and Chief of Police Norm Stamper (hereinafter, collectively (the City)), alleging that Seattle's Public Safety Civil Service Ordinance 107791 and PSCSC Rule 11 do not substantially accomplish the purpose of chapter 41.12 RCW. Specifically, Hossfeld alleged that the provisions in Seattle's ordinance permitting the Chief of Police to exercise discretion in promoting from the top 5 or top 25 percent of a civil service register, whichever number is greater, does not substantially accomplish the purpose of chapter 41.12 RCW.[2] The appeal was consolidated with the following suit.

The Seattle Police Officers' Guild (Guild) filed suit against the City of Seattle, PSCSC and Chief of Police Norm Stamper (the City) on July 21, 1999, making the

---

[2] The City promoted two officers who both scored lower than Hossfeld on the exam. Both of these officers were members of a minority racial classification, and the Chief of Police chose them from separate selective certifications for minority candidates, pursuant to the City's affirmative action plan. The promotions occurred prior to Initiative 200, which barred affirmative action in Washington. The legality of these selective promotions is not an issue before us.

same allegations as Hossfeld. Eight individual members of the Seattle Police Department moved to intervene, alleging additionally that they were improperly passed over for promotion. The officers included the following three appellants. Officer Tim Greeley took the 1995 examination for Sergeant. He scored fifth out of 82 successful candidates on the exam. The City promoted 29 successful candidates from this civil service register. Greeley was never promoted. Greeley claims that he was never able to learn why he was not promoted, except for "unsubstantiated references to anecdotal hearsay and rumors." Officer Keith Swank scored 20th out of 74 successful candidates on the 1997 sergeants' exam. The City promoted 18 officers with lower scores on the exam from the list. Swank was never promoted to sergeant, nor was he able to learn why he was not promoted. Sergeant Dennis Ramm scored sixth out of 15 successful candidates on the 1995 lieutenants' list. The City promoted seven sergeants with lower scores than Ramm. He was never promoted to lieutenant and was never able to learn why he was not promoted.

The trial court granted the City's motion for summary judgment against the intervening officers on the issue of validity of the ordinance. The Guild stipulated to a dismissal of its case against the City. Intervenors Ramm, Greeley and Swank timely appealed the summary judgment order against them.

## ANALYSIS

### I. Substantial Accomplishment

When reviewing the grant or denial of a motion for summary judgment, the standard of review is de novo. This court engages in the same inquiry as the trial court. *Benjamin v. Wash. State Bar Ass'n*, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298

(1993); CR 56(c). If any portion of Seattle's civil service ordinance is invalid, the ordinance requires that we sever the invalid portion and uphold the remainder of the ordinance. Chapter 4.08 SMC ("The provisions of this chapter are declared to be separate and severable and the invalidity of any clause . . . shall not affect the validity of the remainder of this chapter . . . .").

 Promotion from among the top three candidates of a civil service register has been held to substantially accomplish the purpose of chapter 41.12 RCW. *Int'l Ass'n of Fire Fighters Local 404 v. City of Walla Walla*, 90 Wn.2d 828, 586 P.2d 479 (1978). In *International Ass'n of Fire Fighters*, the Supreme Court addressed whether the City of Walla Walla's civil service ordinance for the promotion of fire fighters substantially complied with state law.[3] The City of Walla Walla had enacted a "rule of three" ordinance that allowed three names to be certified to the appointing authority. The fire fighters union contesting the Walla Walla ordinance argued that it did not substantially accomplish the purpose of the state civil service law. The court concluded that the purpose of state law " 'is to establish a civil service system to . . . provide for promotion on the basis of merit.' " *Int'l Ass'n of Fire Fighters*, 90 Wn.2d at 831 (quoting *Reynolds v. Kirkland Police Comm'n*, 62 Wn.2d 720, 725, 384 P.2d 819 (1963)). The Union argued that, in order to substantially accomplish this purpose, all discretion must be removed from the appointing authority. *Int'l Ass'n of Fire Fighters*, 90 Wn.2d at 831. The court disagreed concluding:

> We cannot agree that the legislature intended to eliminate *all* discretion from the decision-making process. RCW 41.08.100 provides for a probationary period of appointment "[to] enable the appointing power to exercise a choice in filling of positions."
>
> More importantly, we do not believe the legislature intended that a "rule of one" was necessarily required of those cities which created fire department civil service systems. RCW

---

[3] The state law governing civil service for firefighters, RCW 41.08.010, is, for purposes of this case, identical to the provisions of RCW 41.12.010, and decisions under either statute constitute authority for both. *Int'l Ass'n of Fire Fighters*, 90 Wn.2d at 831.

41.08.010 adopts a flexible approach by exempting cities which subsequently adopt systems "substantially" accomplishing the purpose of the chapter. A statute should be construed so that each word and phrase is given effect (*Chelan County v. Fellers*, 65 Wn.2d 943, 400 P.2d 609 (1965)), and we do not ignore the implication that cities be given flexibility in their approach.

*Int'l Ass'n of Fire Fighters*, 90 Wn.2d at 831-32.

The court additionally found it relevant that Bellingham and Tacoma used the "rule of three" prior to the enactment of the state civil service law. The court emphasized that the "rule of three"

"is a well-established and well-recognized method of carrying out and accomplishing the purposes of civil service. . . . The statute intended to allow cities and towns a local option as to methods and techniques and as to the many recognized and acceptable methods of setting up a civil service system to substantially accomplish the purpose of civil service."

*Int'l Ass'n of Fire Fighters*, 90 Wn.2d at 832 (quoting *Bellingham Firefighters Local 106, Int'l Ass'n of Firefighters v. City of Bellingham*, 15 Wn. App. 662, 666, 551 P.2d 142 (1976)).

Thus, under *Int'l Ass'n of Fire Fighters* the "rule of three" is just one of the recognized and acceptable methods to comply with state law. The "rule of five" is substantially similar to the "rule of three" upheld in *Int'l Ass'n of Fire Fighters*. Therefore, we hold that the "rule of five" is valid in that it substantially accomplishes the purposes of chapter 41.12 RCW.

■ Although *Int'l Ass'n of Fire Fighters* did authorize a certain amount of discretion, it did not authorize unlimited discretion. Appellants cite to no authority that a rule of 25 percent substantially accomplishes the purposes of the state civil service law. Nor did any Washington city use a rule of percent prior to the enactment of the state civil service law. We therefore rely on the guidance of *Int'l Ass'n of Fire Fighters* in finding that no historical basis exists for allowing the possibility for such a noticeable increase in discretion. We hold that the rule of 25 percent does not substantially accomplish the purposes of chapter 41.12 RCW.

■ Appellants have argued that the entire "rule of five" or 25 percent, whichever is greater, portion of Seattle's ordinance is invalid. In that event, they argue that state law would require us to strike the offending provisions and substitute the fallback "rule of one." Further, if the "rule of one" applied, appellants should have received promotions and would be entitled to damages. However, we are not compelled to invalidate the entire provision. We are compelled by the severability provision of the ordinance to sever only the offensive rule of 25 percent.

■ Since we hold that the "rule of five" is valid, each appellant would have joined at least four others on the list for each appointment, more where multiple positions were being reviewed. The Chief of Police could always lawfully select one of the other candidates on the list. We therefore hold that appellants have not shown that they were caused any harm and have no claim for damages.

II. Timeliness

■ Hossfeld argues that his appeal from the stipulated order dismissing the City's counterclaim for attorney fees allows this court to review the order granting summary judgment against him. Under RAP 5.2(a), an appellant must appeal a final decision of the trial court within 30 days. *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993). Hossfeld's appeal of the summary judgment order against him is untimely by over 500 days. He argues, however, that his subsequent appeal of the stipulated dismissal of the city's counterclaim revived his right to appeal the underlying summary judgment order. Hossfeld is wrong.

The City included in its answer the following passage entitled "counterclaim":

> FURTHER ANSWERING Plaintiff's complaint and by way of a counterclaim herein Defendants state that the Plaintiff's complaint in this cause is wholly unfounded, without merit and frivolous; that the Defendants have been required to incur and continue to incure attorney's fees, costs and expenses in de-

fending against Plaintiff's frivolous action and that the Defendants are entitled to recover same in full from the Plaintiff.

On April 14, 2000, the trial court granted the City's motion for summary judgment against Hossfeld and made two findings: (1) the court found that Seattle's ordinance and rule substantially complied with the state statute; and (2) the court found that the statute of limitations had expired prior to the time that the suit was filed. Nothing further occurred in the case for the next eight months.

In December 2000, Hossfeld's attorney contacted the Seattle City Attorney's Office seeking a stipulated dismissal of the City's counterclaim. The City agreed to a stipulated dismissal. The court signed the stipulation on August 30, 2001. Hossfeld appealed the stipulated dismissal and the order granting the City's motion for summary judgment.

The City's request for attorney fees was not strictly speaking a counterclaim. A defendant's right to recover attorney fees and costs expended in defending meritless claims depends on the provisions of RCW 4.84.185. This fee shifting statute requires the defendant to petition the court within 30 days of the dismissal order, which was never done. RCW 4.84.185. The City's claim for fees and costs was extinguished by operation of law 30 days after the trial court's summary judgment dismissal of the case. The stipulated order dismissing the City's counterclaim was unnecessary and ineffectual. Nothing remained to be dismissed. The use of the order did not reinstate nor extend the proceedings. RAP 5.2(a) required the appeal to be filed within 30 days of the April 14, 2000 summary judgment dismissal of his claim. Therefore, Hossfeld's appeal was untimely.[4]

Affirmed.

GROSSE and BAKER, JJ., concur.

Review granted at 149 Wn.2d 1009 (2003).

---

[4] Based on the analysis above, we do not address the lack of appealability of a stipulated order.