89 P.3d 287 (2004)
121 Wash.App. 453
SEATTLE POLICE OFFICERS' GUILD, Appellant,
v.
CITY OF SEATTLE, Peter Steinbrueck, President of the Seattle City Council, Mayor Greg Nickels, Mayor of the City of Seattle, Norma McKinney, Personnel Director of the City of Seattle, Seattle Police Department and Chief Gil Kerlikowski, Chief of the Seattle Police Department, Respondents.
No. 52042-3-I.
Court of Appeals of Washington, Division 1.
May 3, 2004.
Hillary H. McClure, Aitchison & Vick, Seattle, WA, for Appellant.
*288 Jeffrey M. Slayton, Assistant City Attorney, Seattle City Attorney's Office, Seattle, WA, for Respondents.
BAKER, J.
The Seattle Police Officers' Guild sued the City of Seattle to challenge the transfer of several functions from the Public Safety Civil Service Commission to the City's Director of Personnel.[1] The Guild argues that the civil service system now does not substantially accomplish the purposes of chapter 41.12 RCW, the chapter governing civil service systems for city police. The trial court granted summary judgment to the City, ruling that the system substantially accomplishes the purpose of chapter 41.12 RCW. The Guild appeals.
Part of the purpose of chapter 41.12 RCW is to ensure that an independent body protects police department employees from potential prejudices of their employer. We conclude that Seattle's revision of its public safety civil service system strips the civil service commission of the independence envisioned by the Legislature in enacting chapter 41.12 RCW. Therefore, the resulting system does not substantially accomplish the purpose of chapter 41.12 RCW. We reverse the grant of summary judgment to the City and remand for the trial court to grant partial summary judgment to the Guild consistent with this opinion.
The City of Seattle's Ordinance No. 120658 amended Seattle Municipal Code (SMC) 4.04, Personnel Regulations, and SMC 4.08, Public Safety Civil Service.[2] The ordinance transferred several functions from the Public Safety Civil Service Commission to the City's Director of Personnel, including (1) classifying for purposes of examination, all positions covered by the public safety civil service system, (2) preparing and administering examinations, (3) keeping records of all examinations, (4) preparing a register for each class of positions in the public safety civil service system, (5) certifying of names of eligible candidates when a vacant position is to be filled, and (6) adopting rules for examination, classification, eligibility, preparation of registers, certification, and appointments.[3]
In 1935 and 1937, the Legislature required cities to provide civil rights for fire and police department employees.[4] Chapter 41.12 RCW sets out a model civil service system for city police.[5] Chapter 41.08 RCW is the equivalent statute for city fire departments, and because of the similarities between chapters 41.12 and 41.08, our courts have held that "decisions under either statute constitute authority for both."[6]
Many cities have simply adopted the procedures and policies in chapter 41.12 RCW.[7] But other cities, including Seattle, have enacted an entire civil service system under RCW 41.12.010, which states that "`[t]he provisions of this chapter shall have no application to cities and towns which ... shall ... provide for civil service in the police department by local charter or other regulations which ... substantially accomplish the purpose of this chapter ....'"[8]
The Purpose of Chapter 41.12 RCW
In Reynolds v. Kirkland Police Commission,[9] our Supreme Court provided its *289 interpretation of the purpose for chapter 41.12 RCW:
After a complete reading of RCW chapter 41.12 (Laws of 1937, chapter 13, p. 23), we are of the opinion that its purpose is to establish a civil service system to (1) provide for promotion on the basis of merit, (2) give police officers tenure, and (3) provide for a civil service commission to administer the system and to investigate, by public hearing, removals, suspensions, demotions, and discharges by the appointing power to determine whether such action was or was not made for political or religious reasons and whether it was or was not made in good faith for cause.[[10]]
The City argues that in City of Yakima v. International Association of Fire Fighters, AFL-CIO, Local 469, Yakima Fire Fighters Association,[11] the Supreme Court revised its earlier description of the purpose of chapter 41.12 RCW by stating that the purpose is "`to establish an orderly system of personnel administration and management and to provide tenure and a merit system of appointment and promotion.'"[12] We disagree.
The court in Yakima was referring to Bellingham Firefighters Local 106, International Association of Firefighters v. City of Bellingham.[13] In the relevant portion of the Bellingham decision, the court was describing the purpose of civil service law in general as stated in RCW 41.06.010, and not the specific purpose of chapter 41.08 RCW.[14] Moreover, the Yakima court approvingly quoted the Reynolds court's interpretation of the specific purpose of chapter 41.12 RCW.[15]
The City argues that prohibiting the Director of Personnel from administering the system would be contrary to RCW 41.12.010, which allows for some measure of discretion on the part of local governments. In Bellingham, the court agreed that chapter 41.08 RCW "intended to allow cities and towns a local option as to methods and techniques and as to the many recognized and acceptable methods of setting up a civil service system to substantially accomplish the purpose of civil service."[16]
In Bellingham, the court upheld an ordinance which allowed the City's civil service commission to certify the top three eligible candidates for promotion instead of the single top candidate as specified in RCW 41.08.100. The court reasoned that the Legislature could have required "every city fire department" to use the "rule of one" (certify only one candidate), particularly because the City of Bellingham was using the "rule of three" at the time the Legislature passed the Act.[17] Similarly, in Local 404, International Association of Fire Fighters, AFL-CIO v. City of Walla Walla,[18] the court stated that "[h]ad the legislature considered the `rule of one' to be essential to fire department civil service, it could easily have conditioned the exemption on the adoption of that rule."[19]
Based on these cases, the City argues that it is within its discretion to transfer powers away from the civil service commission to an executive officer of the City because the Legislature did not specify which powers the civil service commission must retain, and the City also points out that other safeguards protect the employees. For example, the civil service commission will retain its appellate power, and employees will receive *290 some protection through collective bargaining.
But these safeguards do not provide the same level of protection to employees afforded by an independent civil service commission. Although currently constrained by other ordinances, the Director of Personnel would still have the power to adopt the rules for examination, classification, eligibility, preparation of registers, certification, and appointments. An executive officer of the City with the power to adopt the rules cannot substantially accomplish the purpose of chapter 41.12 RCW because a fundamental purpose of the chapter is to provide for an independent body to protect police officers. The City's Director of Personnel is not independent.
As stated by our Supreme Court in Yakima, "[t]he fundamental purpose of civil service laws is to require public officials to hire, promote and discharge employees based on merit rather than political affiliation, religion, favoritism or race."[20] Civil service systems must "protect [police and fire department] employees from the arbitrary and discriminatory actions of their employers in hiring, promotions, discipline and discharge and to ensure that the public is protected by qualified police and fire personnel."[21]
To ensure substantial independence on the part of the civil service commission, the Legislature set forth specific attributes of the commissioners, as members of the administrating body.[22] The commissioners must be from different political parties, will not receive compensation, will be appointed for six years, and may only be removed for a good cause.[23] These attributes establish an administrating body that is independent from the employer, creating protection for employees and job candidates from the evils of political patronage.
Because the ordinance contains a severability provision, it is necessary to determine which portions of the ordinance cannot survive. The City persuasively argues that many of the changes are ministerial, and would not cause the civil service system to fail to substantially accomplish the purpose of chapter 41.12 RCW.
Although the Reynolds court specified that the civil service commission should retain the power to administer, it did not define "administer."[24] Seattle can transfer some of the civil service commission's ministerial duties to the Personnel Director's office without reducing the civil service system's ability to substantially accomplish the purpose of chapter 41.12 RCW. But the record and briefing in this case are not developed sufficiently to permit us to parse the ordinance definitively. These issues should be more fully developed on remand.
We reverse the order granting summary judgment to the City and remand to the trial court to grant partial summary judgment to the Guild consistent with this opinion. To do so, the trial court must cull the portions of the ordinance that transferred ministerial tasks to the Director of Personnel from those portions that transferred substantive powers to the Director. For example, record keeping is likely a ministerial task that the City may transfer, while rule-making is not. Only those portions of the ordinance that transfer substantive powers to the Director should be stricken.
REVERSED AND REMANDED.
BECKER, and KENNEDY, JJ., concur.
NOTES
[1] City of Seattle Ordinance No. 120658 (Nov. 30, 2001).
[2] City of Seattle Ordinance No. 120658 (Nov. 30, 2001).
[3] City of Seattle Ordinance No. 120658 (Nov. 30, 2001).
[4] Seattle Police Officers Guild v. City of Seattle, 113 Wash.App. 431, 434, 53 P.3d 1036 (2002), rev. granted, 149 Wash.2d 1009, 69 P.3d 874 (2003); see also Int'l Ass'n of Fire Fighters, AFLCIO, Local 404 v. City of Walla Walla, 90 Wash.2d 828, 830, 586 P.2d 479 (1978) (in 1935, Legislature enacted RCW 41.08 to protect fire fighters); Reynolds v. Kirkland Police Comm'n, 62 Wash.2d 720, 724-25, 384 P.2d 819 (1963) (in 1937, Legislature enacted RCW 41.12 to protect police officers).
[5] Seattle Police, 113 Wash.App. at 434, 53 P.3d 1036.
[6] Seattle Police, 113 Wash.App. at 438 n. 3, 53 P.3d 1036.
[7] Seattle Police, 113 Wash.App. at 434, 53 P.3d 1036.
[8] Seattle Police, 113 Wash.App. at 434, 53 P.3d 1036 (quoting RCW 41.12.010).
[9] 62 Wash.2d 720, 384 P.2d 819 (1963).
[10] Reynolds, 62 Wash.2d at 725, 384 P.2d 819.
[11] 117 Wash.2d 655, 818 P.2d 1076 (1991).
[12] Yakima, 117 Wash.2d at 665, 818 P.2d 1076 (quoting Bellingham Firefighters Local 106, Int'l Ass'n of Firefighters v. City of Bellingham, 15 Wash.App. 662, 665, 551 P.2d 142 (1976)).
[13] 15 Wash.App. 662, 551 P.2d 142 (1976).
[14] Bellingham, 15 Wash.App. at 665-66, 551 P.2d 142.
[15] Yakima, 117 Wash.2d at 664-65, 818 P.2d 1076.
[16] Bellingham, 15 Wash.App. at 666, 551 P.2d 142.
[17] Bellingham, 15 Wash.App. at 666, 551 P.2d 142.
[18] 90 Wash.2d 828, 586 P.2d 479 (1978).
[19] Walla Walla, 90 Wash.2d at 832, 586 P.2d 479.
[20] Yakima, 117 Wash.2d at 664, 818 P.2d 1076.
[21] Yakima, 117 Wash.2d at 665, 818 P.2d 1076.
[22] RCW 41.12.030.
[23] RCW 41.12.030.
[24] Reynolds, 62 Wash.2d at 725, 384 P.2d 819.