92 P.3d 243 (2004)
151 Wash.2d 823
SEATTLE POLICE OFFICERS GUILD, a Washington nonprofit corporation; Sam Hurst, James P. Scott, Baron Bakiano, Lee Lamb, and William Moran, Plaintiffs,
Dennis P. Ramm, Tim D. Greeley, and Keith Swank, Petitioners,
v.
The CITY OF SEATTLE, a municipal corporation, City of Seattle Public Safety Civil Service Commission and Norm Stamper, Chief of Police of Seattle Police Department, Respondents.
No. 73202-7.
Supreme Court of Washington, En Banc.
Argued September 11, 2003.
Decided June 24, 2004.
*244 William Michael Taylor, Lake Forest Park, Jason Harold Grover, Bellevue, for petitioners.
Paul Andrew Olsen, Atty. Gen., of WA/UW Division, Frederick E. Wollett, Seattle, for respondents.
BRIDGE, J.
In Seattle Police Officers Guild v. City of Seattle, 113 Wash.App. 431, 439, 53 P.3d 1036 (2002), the Court of Appeals held that the city of Seattle's (City) practice of certifying five police officers with the highest civil service exam scores for promotional opportunities substantially accomplishes the purpose of chapter 41.12 RCW to provide for promotions on the basis of merit. Dennis Ramm, Tim Greeley, and Keith Swank seek reversal, arguing that the City's practice of certifying five police officers for promotional opportunities gives the chief of police (Chief) too much discretion contrary to chapter 41.12 RCW's purpose of providing for promotion on the basis of merit. We agree with the Court of Appeals and affirm.

*245 I
In 1937, chapter 41.12 RCW established a "prototype" civil service system for city police departments and also authorized cities to enact civil service systems provided that the systems "substantially accomplish the purpose" of chapter 41.12 RCW. RCW 41.12.010. Pursuant to that authority, the City enacted an ordinance in 1978 that created a civil service system for officers in the police and fire departments. City of Seattle Ordinance 107791 (1978), codified as Seattle Municipal Code (SMC), chapter 4.08.[1] This ordinance also created the City's Public Safety Civil Service Commission (PSCSC) and authorized it to develop rules for administration of the civil service system that governs the City's police and fire departments. Former SMC 4.08.070(A).
The City's 1978 civil service ordinance requires police officers to take a civil service examination in order to determine their eligibility for promotions. Former SMC 4.08.070(C); PSCSC Rule 9. The PSCSC creates, administers, and grades the civil service examination and establishes a promotional register that consists of all eligible candidates in rank order according to their performance on the exam. Former SMC 4.08.070(C).
To fill a position for sergeant, lieutenant, or captain, the Chief makes a "request for certification" to the PSCSC. PSCSC Rule 11.03. The request identifies the title of the available position and the number of positions available. Id. The PSCSC then provides the Chief with a "certification" list of candidates for his selection. PSCSC Rule 11.05.
The number of candidates on the certification list is dependent upon the number of positions available. Former SMC 4.08.070(F). If only one position is available, the PSCSC certifies the "the names of candidates in the top twenty-five (25) percent of the eligible register, or the top five (5) candidates, whichever number is larger" ("rule of five or 25 percent"). Former SMC 4.08.070(F); PSCSC Rule 11.05(c)(1). If multiple positions are available, the PSCSC adds an additional candidate for each available position. Id.
After receipt of the PSCSC certification list, the Chief may choose to promote any of the officers on the list regardless of the officers' ranking but may not promote outside of the list. Former SMC 4.08.070(F); SMC 4.08.110(A). The Chief at the time of these challenged promotions was Norm Stamper (Chief Stamper). He admitted that he viewed the list as "horizontal," and sometimes made promotions to officers ranked lower on the list. Clerk's Papers (CP) at 136. Further, Chief Stamper stated that he "[did] not accord weight or consideration to any element of the civil service score after he receive[d] the certification." Id. Instead, he looked for leadership qualities, community involvement, work history, disciplinary history, records of internal investigations, training, and past assignments when making his decisions to promote candidates.[2] CP at 127.
Petitioner Ramm took the civil service promotional exam for police lieutenant on March 18, 1995. Ramm passed the exam and *246 ranked number six on the promotional register. Chief Stamper made five certification requests during the period of 1995-97 to fill 12 lieutenant vacancies. CP at 456-60, 240. He promoted seven sergeants with a lower rank on the promotional register. CP at 76, 563-65. Ramm never learned why Chief Stamper decided not to promote him even after contacting Chief Stamper twice and contacting Chief Stamper's assistant chief three times. CP at 76.
Petitioner Greeley took the civil service promotional exam for police sergeant on August 26, 1995. Greeley passed the exam and was ranked number five on the promotional register. Chief Stamper made seven certification requests during the period of 1995-97 to fill 35 sergeant vacancies. CP at 478-84, 240. He promoted 26 officers with a lower rank on the promotional register. CP at 83, 563-65. Greeley never learned why Chief Stamper decided not to promote him even after contacting Chief Stamper, Chief Stamper's assistant chiefs, and the director of community policing. CP at 84.
Petitioner Swank took the civil service promotional exam for police sergeant on August 23, 1997. Swank passed the exam and was ranked number 20 on the promotional register. Chief Stamper made 12 certification requests during the period of 1997-2000 to fill 39 sergeant vacancies. CP at 519-30, 240. He promoted 18 officers with a lower rank on the promotional register. CP at 80, 566-68. Swank never learned why Chief Stamper decided not to promote him even after contacting Chief Stamper and his precinct commander. CP at 81.
In July 1999, the Seattle Police Officers Guild (Guild) filed suit against the City, PSCSC and Chief Stamper alleging that the City's system of promotion under the "rule of five or 25 percent" failed to substantially accomplish the purpose of chapter 41.12 RCW. CP at 727. Eight Seattle Police Department officers, including the three petitioners, intervened alleging that the City improperly passed them over for promotion. CP at 31, 67, 775, 783, 802. The intervening officers requested injunctive and declaratory relief as well as damages for the City's alleged failure to award promotions. CP at 70-71.
The Guild stipulated to a dismissal of its action against the City after reaching a settlement. CP at 713, 249. The City and the intervening officers filed cross motions for summary judgment.[3] CP at 220, 848. The trial court granted the City's motion for summary judgment against the intervening officers and dismissed the officers' claims finding that the City's certification procedures substantially accomplished the purposes of chapter 41.12 RCW. CP at 717. Ramm, Greeley, and Swank (hereinafter Ramm) appealed to Division One of the Court of Appeals.
The Court of Appeals considered Ramm's claim that the City's certification procedures failed to comply with RCW 41.12.010. Seattle Police Officers Guild, 113 Wash.App. at 438-39, 53 P.3d 1036. The court concluded that the City's certification of the top five performers substantially accomplishes the purpose of chapter 41.12 RCW but that the certification of the top 25 percent did not.[4]Id. at 439-40, 53 P.3d 1036. The court then severed that portion of the ordinance permitting certification of 25 percent of the promotional *247 register and upheld the trial court's dismissal of the officers' claims.[5]Id. at 440, 53 P.3d 1036. Ramm petitioned for review to this court.[6]

II
Our review of an appeal of a grant or denial of a motion for summary judgment is de novo, and we engage in the same inquiry as the trial court. Benjamin v. Wash. State Bar Ass'n, 138 Wash.2d 506, 515, 980 P.2d 742 (1999); Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). We will affirm summary judgment if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Clements, 121 Wash.2d at 249, 850 P.2d 1298. A material fact exists when the outcome of the litigation depends on its resolution. Id. We resolve all reasonable inferences against the moving party and will grant the motion if reasonable persons could reach but one conclusion. Id.; Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000).

III

Validity of the City's Certification Procedure
In 1937, the legislature created a civil service system for city police departments to achieve the following purposes:
(1) provide for promotion on the basis of merit, (2) give police officers tenure, and (3) provide for a civil service commission to administer the system and to investigate, by public hearing, removals, suspensions, demotions, and discharges by the appointing power to determine whether such action was or was not made for political or religious reasons and whether it was or was not made in good faith for cause.[[7]]
Reynolds v. Kirkland Police Comm'n, 62 Wash.2d 720, 725, 384 P.2d 819 (1963) (emphasis added). Civil service systems were enacted to eliminate the practice of favoritism by state and city officials. See City of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469, 117 Wash.2d 655, 664, 818 P.2d 1076 (1991) ("[i]n essence, the civil service system was designed to replace the spoils system with a merit system"); see also Gogerty v. Dep't of Insts., 71 Wash.2d 1, 4-5, 426 P.2d 476 (1967) ("[t]his declared purpose is clearly within the traditional principle of the merit system of public employment, i.e. the delimitation or elimination of the spoils system"). We have explained that a merit system is one that "require[s] public officials to hire, promote and discharge employees based on merit rather than political affiliation, religion, favoritism or race." Fire Fighters, 117 Wash.2d at 664, 818 P.2d 1076.
Chapter 41.12 RCW establishes a "prototype" civil service system for cities. The prototype requires that a city's civil service commission certify the person ranked highest on the eligibility list for promotion to positions declared vacant by the appointing authority ("the rule of one"). RCW 41.12.100. The appointing authority must appoint the certified individual. Id. Thus, the appointing authority has no discretion in making the promotion selection.
Chapter 41.12 RCW does not require strict adherence to its prototype civil service system. Rather, it specifically provides that
[t]he provisions of this chapter shall have no application to cities and towns which at the present time have provided for civil service in the police department or which shall subsequently provide for civil service in the police department by local charter or other regulations which said local charter or regulations substantially accomplish the purpose of this chapter, nor to cities having a police force of not more *248 than two persons including the chief of police.
RCW 41.12.010 (emphasis added).
The City exercised that authority under RCW 41.12.010 in 1978 and permitted its civil service commission to certify "the names of candidates in the top twenty-five (25) percent of the eligible register, or the top five (5) candidates, whichever number is larger." ("rule of five or 25 percent"). Former SMC 4.08.070(F); PSCSC Rule 11.05(c)(1). Consequently, the appointing power, Chief Stamper, possessed considerable discretion in choosing which officers to promote. Ramm contends that the City's promotion procedures afforded the appointing authority too much discretion, contrary to chapter 41.12 RCW's purpose of providing for promotion on the basis of merit, and therefore do not substantially accomplish the purpose of the chapter.
The Court of Appeals considered whether the City's "rule of five or 25 percent" fell within the authority afforded to cities by the legislature in RCW 41.12.010. Seattle Police Officers Guild, 113 Wash.App. at 438-39, 53 P.3d 1036. The court concluded that certification of the top 25 percent afforded too much discretion to the Chief and failed to substantially accomplish the purpose of chapter 41.12 RCW since the City did not produce any authority that justified the rule and no Washington municipality used the rule of 25 percent at the time of the statute's enactment. Id. at 439, 53 P.3d 1036. However, the court upheld the validity of the City's "rule of five" under the rationale that "[t]he `rule of five' is substantially similar to the `rule of three,'" id., which we upheld in International Ass'n of Firefighters, AFL-CIO, Local 404 v. City of Walla Walla, 90 Wash.2d 828, 586 P.2d 479 (1978).
In Local 404, we considered whether the city of Walla Walla's certification of the top three performers on the civil service exam ("rule of three") substantially accomplishes the purpose of chapter 41.08 RCW, a statute governing civil service rights of city fire department employees.[8] RCW 41.08.010. We held that the legislature intended to provide flexibility and discretion for cities in RCW 41.08.010 by its use of the word "substantially." Id. at 831-32, 586 P.2d 479. Further, we reasoned that the legislature could have specified that cities enact a "rule of one" since at least two cities used the "rule of three" in 1935 at the time of passage of chapter 41.08 RCW. Id. We noted that the "rule of one" was not "of such overriding concern that it is essential under RCW 41.08," and the "rule of three" was "`a well-established and well-recognized method of carrying out and accomplishing the purposes of civil service.'" Id. at 832, 586 P.2d 479 (quoting Bellingham Firefighters Local 106 v. City of Bellingham, 15 Wash.App. 662, 666, 551 P.2d 142 (1976)).[9] Thus, we upheld the city of Walla Walla's "rule of three."
Ramm contends that we justified our decision in Local 404 to uphold the "rule of three," in part, because it was a recognized and acceptable method in civil service systems.[10]Local 404, 90 Wash.2d at 832, *249 586 P.2d 479. In Local 404, however, we reached our decision to uphold the "rule of three" by interpreting the meaning of, "substantially accomplish the purpose" in RCW 41.08.010. Id. at 831-32, 586 P.2d 479. We concluded that by use of this language the legislature intended that cities retain flexibility and discretion over their civil service systems.[11]Id. Indeed, the statute expressly states that cities must accomplish only the "purpose" rather than follow the particular methods prescribed by chapter 41.12 RCW. RCW 41.12.010.
Ramm has not demonstrated how the City's "rule of five" fails to substantially accomplish chapter 41.12 RCW's purpose of ensuring that its officers receive promotions based on merit. On its face, the City's civil service ordinance honors merit principles by granting employees the right to "compete openly for positions on the basis of knowledge, skills, and abilities." SMC 4.08.140(A). The City's system ensures that officers qualify for promotional opportunities based on their performance on the civil service exam. Id.
Further, Ramm has failed to establish that the City awarded promotions other than on the basis of merit in practice.[12] While Chief Stamper stated that officers should attempt to personally meet him and members of the SLT team in order to improve their chances of promotion, a practice that arguably raises an inference of favoritism, it is difficult to argue that this practice would not occur under the already permissible "rule of three." See Local 404, 90 Wash.2d at 832, 586 P.2d 479.
Although Ramm argues that the legislature has not historically permitted certification of more than three candidates, in fact, our legislature has enacted a statute for state civil service employees that permits "[c]ertification of names for vacancies, including departmental promotions, with the number of names equal to six more names than there are vacancies to be filled."[13] RCW *250 41.06.150(2) (effective until June 30, 2004) (emphasis added).[14] Like 41.12 RCW, the state employees' civil service statute requires promotion based on merit principles. RCW 41.06.010.[15] The legislature obviously believed that certifying more than three names for promotions could accomplish this purpose.[16] Since the legislature has concluded that RCW 41.06.150(2) meets the purpose of promoting state employees based on merit principles, the City's "rule of five" certainly can "substantially accomplish" this same purpose. RCW 41.12.010.
Lastly, Ramm asserts that if we find that the "rule of five" substantially accomplishes the purposes of chapter 41.12 RCW there will be no limit on an appointing authority's discretion. However, we do not make this decision without legislative guidance. As noted above, the legislature has determined that certification of "six more names than there are vacancies to be filled" satisfies the purpose of ensuring that state appointing authorities promote on the basis of merit. RCW 41.06.150(2). Thus, we hold that cities will substantially accomplish the purpose of chapter 41.12 RCW so long as the established civil service system provides for appointment by certification of no greater than "six more names than there are vacancies to be filled."[17]Id. Designation of civil service certification procedures that accomplish the purpose of providing for promotion on the basis of merit is a legislative function, and we will adhere to the legislature's "benchmark" when considering whether cities' civil service ordinances have accomplished this purpose.[18]

*251 Severance

While validating the City's certification procedure as to the "rule of five," the Court of Appeals concluded that the "rule of 25 percent" failed to satisfy the mandate of RCW 41.12.010. Seattle Police Officers Guild, 113 Wash.App. at 440, 53 P.3d 1036. The court then struck the impermissible language from the ordinance and validated the remainder. Id. Ramm maintains that the court should have invalidated the City's entire certification provision (former SMC 4.08.070(F)), and rule (PSCSC Rule 11.05(c)(1)), which contained the "rule of five or 25 percent." Ramm asserts that our decision in Reynolds, 62 Wash.2d at 725, 384 P.2d 819, and the language of the City's severability provision require this result. We disagree.
In Reynolds, we considered whether the city of Kirkland's civil service ordinance's notice and appeal procedures for officers facing review and suspension substantially accomplished the purpose of chapter 41.12 RCW. 62 Wash.2d at 728-29, 384 P.2d 819. We concluded that "[t]he civil service system established by the ordinance did not establish a civil service commission to conduct the investigative hearing required by statute, but, rather, established a police commission with inconsistent functions." Id. at 729, 384 P.2d 819. Thus, we invalidated the city of Kirkland's ordinance, holding that the city of Kirkland's review and suspension procedures wholly failed to comply with the procedures set forth in chapter 41.12 RCW. Id.
Reynolds does not control the result here. The city of Kirkland's provisions failed to afford any meaningful procedures for suspension and review of disciplinary actions. Id. at 727, 384 P.2d 819. Unlike the city of Kirkland, the City enacted certification procedures that, in substantial part, ensured that officers receive promotions on the basis of merit. Thus, there is no basis to reach the conclusion that the City's entire certification procedure has failed to comply with chapter 41.12 RCW.
The "severability" provision of chapter 4.08 SMC provides,
[t]he provisions of this chapter are declared to be separate and severable and the invalidity of any clause, sentence, paragraph, subdivision, section or portion of this chapter, or the invalidity of the application thereof to any person or circumstances shall not affect the validity of the remainder of this chapter or the validity of its application to other persons or circumstances. (Ord. 107791 § 21, 1978.)
Ramm argues that a correct interpretation of the word "clause" in the City's severability provision prohibits courts from striking out select words that pertain to the certification of 25 percent of the promotional register from former SMC § 4.08.070(F) and PSCSC Rule 11.05(c)(1). However, when a severability clause exists we routinely excise select words from a sentence to honor legislative intent and preserve an otherwise valid statute, regulation, or ordinance. See State v. Williams, 144 Wash.2d 197, 212-13, 26 P.3d 890 (2001) (striking a single word to render a statute constitutional because the statute could still "serve its purpose independently" without the word that raised constitutional concerns); see also State v. Anderson, 81 Wash.2d 234, 236, 501 P.2d 184 (1972) (holding that the legislature intended that courts may sever unconstitutional sections of a statute when it included a severability clause). Thus, the Court of Appeals was correct in severing language that pertained to certification of 25 percent of the promotional register while retaining the "rule of five."

Summary Judgment and the "Rule of Five"
Lastly, Ramm argues that even if the City's "rule of five" is permitted under RCW 41.12.010, the City was not entitled to summary judgment. But absent a claim of discrimination or similar unlawful hiring practices, Ramm's allegation that the Chief unlawfully failed to promote him under the "rule of five" will never survive summary judgment. In each instance, he "would have *252 joined at least four others on the list for each appointment, more where multiple positions were being reviewed." Seattle Police Officers Guild, 113 Wash.App. at 440, 53 P.3d 1036. As the Court of Appeals aptly reasoned, Chief Stamper "could always lawfully select one of the other candidates on the list."[19]Id. (emphasis added). Accordingly, the trial court properly granted summary judgment of dismissal.

IV
The City's "rule of five" substantially accomplishes the purposes of chapter 41.12 RCW. Cities, however, may not enact ordinances that exceed the number the legislature has recognized as accomplishing the purpose of providing for promotions on the basis of merit. The Court of Appeals appropriately severed the invalid language pertaining to the "rule of 25 percent" from the City's civil service ordinance. The City was entitled to an award of summary judgment of dismissal. The decision of the Court of Appeals is affirmed.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN and IRELAND, JJ.
CHAMBERS, J., concurs in result only.
SANDERS, J. (dissenting).
The purpose of chapter 41.12 RCW is to "provide for promotion on the basis of merit" in city police departments. Reynolds v. Kirkland Police Comm'n, 62 Wash.2d 720, 725, 384 P.2d 819 (1963) (emphasis added).[1] And absent a civil service system which "substantially accomplish[es] th[is] purpose," RCW 41.12.010, a city police department is statutorily prohibited from promoting any person other than the top candidate for each position available. RCW 41.12.100. The majority does not dispute this purpose, nor the default statutory system. Majority at 247-248.
The majority nevertheless slides further down the slippery slope about which Chief Justice Wright warned over 25 years ago:
It is only a matter of degree and not a difference in kind whether the appointment is made from a list of 3 or a list of 25, or in fact, from a list of 100 names. If the selection can be other than the one best, the element of absolute integrity is gone; politics can enter in.
Int'l Ass'n of Fire Fighters, AFL-CIO, Local 404 v. City of Walla Walla, 90 Wash.2d 828, 835, 586 P.2d 479 (1978) (Wright, C.J., dissenting) (hereinafter Local 404).
Moreover even if the rule of five were lawful, the Court of Appeals' invalidation of the city of Seattle's (City) 25 percent[2] rule *253 generates a genuine, if not palpable, issue of material fact thereby precluding summary judgment.
Because the majority opens the door wider for politics and favoritism, two evils absolutely inconsistent with a merit-based hiring system, and because the majority does not properly apply the appropriate standard for summary judgment, I dissent.

I.
The ordinance at issue provides:
The [Public Safety Civil Service Commission (hereinafter PSCSC) ] shall:
. . . .
6) When a vacant position is to be filled, certify to the appointing authority the names of candidates in the top 25% of the eligible register, or the top five candidates, whichever number is larger, subject to affirmative action requirements. Where more than one position in a class is to be filled, certify one additional name of the person standing next highest on the register for each additional position. The appointing authority shall fill such positions by appointment only from the persons certified by the [PSCSC].
Seattle Ordinance 107791, § 7(6) (Nov. 6, 1978).
Local 404 held the Walla Walla fire department's practice of certifying the top three candidates for eligibility for promotion substantially accomplished the purpose of hiring based on merit. Local 404, 90 Wash.2d at 831-32, 586 P.2d 479. The fundamental basis of the majority decision was the historical acceptance of the rule of three which existed prior to the legislature enacting chapter 41.08 RCW.[3] It said:
An important indication of the legislative intent can be gleaned from the history of RCW 41.08. In 1935, both Bellingham and Tacoma used the "rule of three" in their civil service systems which included the fire departments. Had the legislature considered the "rule of one" to be essential to fire department civil service, it could easily have conditioned the exemption on the adoption of that rule.
Local 404, 90 Wash.2d at 832, 586 P.2d 479. It noted the rule of three was "`a well-established and well-recognized method of carrying out and accomplishing the purposes of civil service.'" Id. (quoting Bellingham Firefighters Local 106 v. City of Bellingham, 15 Wash.App. 662, 666, 551 P.2d 142 (1976)). There was no indication the legislature attempted to eradicate a widely accepted practice by adopting the rule of one in RCW 41.08.100, thereby persuading this court to accept that practice as lawful. See id. Yet the majority brushes aside the absence of any historical support for the rule of five, claiming Local 404's "approval of the `rule of three' hinged on our interpretation of the language `substantially accomplish[es] the purpose' in RCW 41.08.010." Majority at 249 n. 11 (alteration in original). True, the ultimate disposition of Local 404 hinged on this construction, but contrary to that suggested by the majority, we did not apply the phrase in a legal vacuum. Rather we looked to the history supporting the rule of three preexisting the legislature's adoption of chapter 41.08 RCW in 1935. Local 404, 90 Wash.2d at 832, 586 P.2d 479. The rule of five which is presently before us, however, is devoid of any similar historical acceptance.[4]
*254 The City's practice also demonstrates the department's patent willingness to disregard merit and give greater weight to other factors such as gender and ethnic origin. Nothing in chapter RCW 41.12 permits such considerations, and expressly mandates the precise opposite: "All ... promotions in the department shall be made solely on merit, efficiency, and fitness ... which shall be ascertained by open competitive examination and impartial investigation." RCW 41.12.050(4) (emphasis added). The scheme employed by the City renders the "open competitive examination" meaningless once the results are released even though the examination is the statutorily directed basis for ascertaining merit. Id. Chief Norm Stamper affirmed his practice of ignoring the difference in merit scores between certified candidates by testifying he "perceive[d] the certification list as horizontal and [did] not accord weight or consideration to any element of the civil service score after he receives the certification." Clerk's Papers (CP) at 136 (emphasis added).
The scheme in practice (as modified by affirmative action considerations) demonstrated some candidates were also made available for promotion based on their race or gendereven though they did not score high enough on the merit exam to be on the general certified list. For example the December 29, 1995 certification list made pursuant to Captain Nicholas Metz's request (acting as personnel director) to fill 10 sergeant vacancies included 29 names pursuant to the 25 percent rule. There were also four separate certifications of two women, one Native American, four Hispanic Americans, and nine Asian Americans who did not qualify under either the rule of five or the rule of 25 percent. See CP at 478, 489-92. This practice cannot coexist with, and is facially contrary to, a merit system which "require[s] public officials to hire, promote and discharge employees based on merit rather than political affiliation, religion, favoritism or race." City of Yakima v. Int'l Ass'n of Fire Fighters, 117 Wash.2d 655, 664, 818 P.2d 1076 (1991).[5]
Despite the absence of any historical basis to support its conclusion, the majority asserts chapter 41.06 RCW justifies the assumption "[t]he legislature obviously believed that certifying more than three names for promotions could accomplish th[e] purpose" of civil service acts. Majority at 250. Chapter 41.06 RCW was established by initiative in 1960, establishing a rule of two for state employees. The legislature has twice amended the statute to increase the number of candidates certified for promotion to six, the current statutory number.[6]See LAWS OF 1993, ch. 281, § 27, codified as amended at RCW 41.06.150(2). Thus, according to the majority, legislative provisions relating to state civil service employees are an "obvious[]" indicator of legislative intent to grant more discretion to city civil service systems in police and fire departments. Majority at 250. This argument presumes the legislature intended its amendments to chapter 41.06 RCW to apply to chapter 41.12 RCW. I posit the opposite conclusion would rationally follow.
Legislative intent is derived from the text of the statute whenever possible. State v. McDougal, 120 Wash.2d 334, 350, 841 P.2d 1232 (1992). If the legislature employs different provisions in the same statute, we presume the legislature intends different meanings to apply. State v. Talley, 122 Wash.2d 192, 216, 858 P.2d 217 (1993). This rule carries more weight when the legislature *255 employs different provisions in different statutes. See State v. Roth, 78 Wash.2d 711, 715, 479 P.2d 55 (1971). We further presume "the legislature ... know[s] the existing state of the case law in those areas in which it is legislating." Woodson v. State, 95 Wash.2d 257, 262, 623 P.2d 683 (1980); see also Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994).
Despite the evolution of chapter 41.06 RCW to now include the rule of six, see RCW 41.06.150, the legislature has not once revised the "rule of one" embedded in RCW 41.12.100 since its enactment in 1937. Nor has the legislature endeavored to amend the city fire department's traditional "rule of one" procedure since its adoption in 1935. LAWS OF 1935, ch. 31, § 11, codified at RCW 41.08.100. And since this court held the "rule of three" substantially accomplished the purpose of chapter 41.08 RCW in 1978 (which is identical in all relevant aspects to chapter 41.12 RCW), see Local 404, 90 Wash.2d at 830, 586 P.2d 479, the legislature has not only had the opportunity to amend chapter 41.12 RCW, but it has done so four times. See LAWS OF 1987, ch. 339, § 2 (amending RCW 41.12.050); LAWS OF 1993, ch. 47, § 5 (amending RCW 41.12.040); LAWS OF 1993, ch. 189, § 1 (amending RCW 41.12.050); LAWS OF 2002, ch. 143, § 1 (amending RCW 41.12.050). None of these amendments, however, has expanded the judicially accepted "rule of three" nor the statutorily adopted "rule of one." Even more specific is the legislature's express pronouncement of chapter 41.06 RCW's application to state agencies. RCW 41.06.040 expressly limits chapter 41.06 RCW's reach to "[e]ach board, commission, or other multimember body, including, but not limited to, those consisting in whole or in part of elective officers [and] [e]ach agency, and each employee and position therein, not expressly excluded or exempted under the provisions of RCW 41.06.070." RCW 41.06.020 defines "[b]oard" and "[a]gency" to include only divisions of the state government. And while RCW 41.06.070 exempts certain divisions of the state government from applicability of chapter 41.06 RCW, there is simply no indication chapter 41.06 RCW applies to any city municipality.
That the legislature elected to distinguish between state civil service systems and city civil service systems is of no concern. "It is not the province of this court to second-guess the wisdom of the Legislature's policy judgment so long as the Legislature does not offend constitutional precepts." Davis v. State ex rel. Dep't of Licensing, 137 Wash.2d 957, 976 n. 12, 977 P.2d 554 (1999).
The majority's injection of the "rule of six" into chapter 41.12 RCW is completely at odds with basic rules of statutory construction and in fact rewrites the statute by assuming the legislature intended chapter 41.06 RCW to apply to chapter 41.12 RCW, notwithstanding the absence of any statutory text to support such a view. Courts simply have no authority to act as the majority does, and we said as much in State v. Groom, 133 Wash.2d 679, 689, 947 P.2d 240 (1997): "[H]owever much members of this court may think that a statute should be rewritten, it is imperative that we not rewrite statutes to express what we think the law should be. We simply have no such authority."
Absent any legislative guidance on the promotional hiring system in city police departments, I would adhere to the previously adopted "rule of three" as the upper limit of certification, noting even that rule is problematic for the reasons articulated by Chief Justice Wright. See Local 404, 90 Wash.2d at 835, 586 P.2d 479 (Wright, C.J., dissenting).

II.
Even were we to arbitrarily adopt a rule of five, application of the proper summary judgment standard would still preclude affirming the Court of Appeals. The majority claims summary judgment in favor of the City was appropriate because "Chief Stamper `could always lawfully select one of the other candidates on the list.'" Majority at 252 (quoting Seattle Police Officers Guild v. City of Seattle, 113 Wash.App. 431, 440, 53 P.3d 1036 (2002)). This approach misapplies the summary judgment standard.
We have repeatedly warned "[s]ummary judgment exists to examine the sufficiency of legal claims and narrow issues, not as an *256 unfair substitute for trial." Babcock v. State, 116 Wash.2d 596, 599, 809 P.2d 143 (1991) (emphasis added); see also City of Seattle v. State, 136 Wash.2d 693, 697, 965 P.2d 619 (1998). As such summary judgment is plainly inappropriate unless the moving party meets its initial burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. CR 56(c); Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
A similar situation was confronted in Graves v. P.J. Taggares Co., 94 Wash.2d 298, 616 P.2d 1223 (1980). There the plaintiff prevailed on partial summary judgment which held the defendant was a principal of the primary tortfeasor and therefore vicariously liable, even though the plaintiff offered only an affidavit describing the automobile accident and that the driver was an agent as a matter of law. Id. at 302, 616 P.2d 1223. We reversed summary judgment, noting "`[i]f the moving party does not sustain [its initial] burden [to offer factual evidence showing it is entitled to judgment as a matter of law], summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials.'" Id. (emphasis added) (quoting Jacobsen v. State, 89 Wash.2d 104, 108, 569 P.2d 1152 (1977)).
The same is true here. It is the City's initial burden as the summary judgment movant to show an absence of a genuine issue of material fact before such burden shifts to the officers. CR 56(c); Young, 112 Wash.2d at 225, 770 P.2d 182. Only when the City makes this initial showing would Ramm and the other officers have to bring forth evidence demonstrating a genuine issue of material fact still exists. CR 56(e); Berger v. Sonneland, 144 Wash.2d 91, 112, 26 P.3d 257 (2001); Graves, 94 Wash.2d at 302, 616 P.2d 1223. Were we faced with the officers' motion for summary judgment, the majority might be correct. But such is not the case as it is the City which moved for summary judgment of dismissal. As the summary judgment movant, the City must set forth facts and evidence showing no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. CR 56(c). And though a party opposing summary judgment cannot rely on "argumentative assertions that unresolved factual issues remain," Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986), the nonmoving party's obligation to provide some evidence rebutting the moving party's evidence does not arise unless and until the movant meets its initial burden. To show it is entitled to judgment as a matter of law the City must demonstrate the officers would not have been hired under the rule of five. The City cannot do this with respect to Officers Tim Greeley and Keith Swank.[7]
In December 1995 Captain Nicholas Metz (acting on behalf of Chief Stamper) requested certification to fill 10 vacancies for police sergeant. Following the 25 percent rule, the PSCSC certified 29 names of the 80 eligible candidates. Had the PSCSC followed the rule of five, only 14 candidates would have been certified, one of whom would have been Greeley. Two of the 10 officers promotedofficers David Unger and Donald MacMillanwould not have been certified under the rule of five. CP at 478, 486-92, 564. At least four other occasions in which Greeley was passed over involved similar situations where the promotion was given to a person who never should have been certified.[8]
*257 The same can be said for Officer Swank. Chief Stamper requested certification on November 13, 1998, for six sergeant vacancies. The PSCSC certified 21 names, 11 more than authorized by the rule of five. Of the six officers promoted to sergeant, one (Teresa Duffy) would not have been certified under the rule of five. CP at 522, 539-41, 568. An officer who never should have been certified was promoted over Swank two other times.[9]
Yet the majority still deprives a jury from resolving these factual matters, citing evidence in the record suggesting Chief Stamper and other high-ranking officials within the Seattle Police Department looked disfavorably upon Officers Greeley and Swank. But this evidence in isolation, even though uncontradicted by Officers Greeley and Swank, is still insufficient to overcome the City's threshold summary judgment burden because a court reviewing a summary judgment motion must view all facts and reasonable inferences therefrom in a light most favorable to the nonmoving party. Stalter v. State, 151 Wash.2d 148, 154, 86 P.3d 1159 (2004); Berger, 144 Wash.2d at 102-03, 26 P.3d 257; Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). And only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment. Smith v. Safeco Ins. Co., 150 Wash.2d 478, 485, 78 P.3d 1274 (2003); Morris v. McNicol, 83 Wash.2d 491, 494-95, 519 P.2d 7 (1974).
The majority affirms summary judgment claiming the evidence shows "Chief Stamper always had discretion to choose someone other than [Officer Greeley or Officer Swank]." Majority at 252 n. 19. I agree that option was presentbut so was Chief Stamper's option to select the plaintiff officers who are the nonmoving parties to a summary judgment motion. Any reasonable inference on whom Chief Stamper would have hired must be viewed in favor of Officers Greeley and Swank. It is plausible to conclude Chief Stamper might have promoted someone other than Officer Greeley or Officer Swank had the City followed the rule of five; however it is equally plausible under this record to conclude Chief Stamper would have chosen Greeley and/or Swank over the other candidates, especially given their high marks on the civil service exam. Deciding which conclusion is more or less probable is within the province of the jury, not this court. See Morton v. Lee, 75 Wash.2d 393, 397-98, 450 P.2d 957 (1969) (affirming denial of motion for directed verdict because reasonable minds could differ on factual issue, which was jury's duty to resolve).
Officer Greeley's case perfectly illustrates the majority's error, specifically how he was passed over on the October 7, 1997 certification. Two vacancies under the 25 percent rule resulted in the promotion of Kevin Haistings, who would not have been eligible for promotion had the City followed the rule of five. See CP at 512, 565. Officer Greeley, as well as four other candidatesSam Hurst, Gene McNaughton, Lee Lamb, and William Moranwould have received that promotion instead of Haistings had the unlawful 25 percent rule not been followed. CP at 512. That Chief Stamper would have passed up Officer Greeley again over these *258 other four individuals is not a foregone conclusion. Evidence supporting Officer Greeley's promotion, which must be considered in a light favoring Greeley, see Berger, 144 Wash.2d at 102-03, 26 P.3d 257, includes Chief John Pirak's deposition testimony regarding Hurst's unsuitability for promotion. See, e.g., CP at 686 (testifying that he had received "some input having to do with [Hurst's] anger and also with the prior discipline history"); id. at 691, 26 P.3d 257 (referencing his notes from the promotional process and testifying Captain Metz recommended against promoting Hurst).[10] Additional evidence includes the fact Chief Stamper passed over each of the four individualsHurst, McNaughton, Lamb, and Moranjust as many times as Stamper passed over Officer Greeley's name. See CP at 486-92, 503-14, 564-65 (passing up Hurst, McNaughton, Lamb, and Moran, although they ranked 7th, 18th, 26th, and 32nd on the exam, respectively). Moreover Chief Pirak affirmed "Chief Stamper received a number of letters from sergeants and lieutenants and captains supporting Officer Greeley for promotion." CP at 691. And despite some negative testimony with respect to Officer Swank's potential for promotion, Chief Pirak affirmed Swank "was given good marks in a number of areas." CP at 683.
Therefore I cannot agree reasonable minds could reach but one conclusion, namely that Officers Greeley and Swank would not have been hired had the City followed the rule of five. The only way to so conclude is to give the City the benefit of the doubt on all factual inferences. This is precisely what the appropriate review of summary judgment prohibits.
The City failed to provide uncontroverted evidence that Greeley and Swank would not have been hired had the PSCSC followed the rule of five instead of its unlawful 25 percent rule. In fact there is no such evidence in the record. Viewing the record in a light most favorable to the nonmoving parties Greeley and Swank, summary judgment is plainly inappropriate. The rule of five requires these cases be remanded for trial.

III.
The legislature envisioned a system whereby police officers and other civil servants would be promoted based on merit. The majority's expansion of the "rule of three" to the "rule of five" embraces a system which promotes the idea "it's not what you know, it's who you know." Chief Stamper attested to this attribute:
If you are out of sight and out of mind the system that we have in place now can make it difficult for you to get the kind of consideration, plus or minus, that you deserve as a viable candidate for promotion. So to the Captains we're saying getting [sic] acquainted, to the officers we're saying get acquainted. I've urged police officers, Sergeants and Lieutenants for that matter, to make the rounds of the SLT [police department's Senior Leadership Team], to visit with them, to make appointments.
CP at 624. This is precisely what the legislature sought to prohibit. Moreover summary judgment is plainly inappropriate when issues of material fact are as patently obvious as they are in Greeley's and Swank's cases.
I therefore dissent.
OWENS and FAIRHURST, JJ., concur.
NOTES
[1] The relevant sections of SMC 4.08.070 (1978) pertaining to promotion procedures were amended by City of Seattle Ordinance 120658, § 6 (Nov. 30, 2001). The 2001 amendments transferred many of the promotion procedures previously performed by the Public Safety Civil Service Commission (PSCSC) to the city of Seattle personnel director (Director). The Director's duties remain largely the same as those performed by the PSCSC, and the Director currently abides by PSCSC rules. See SMC 4.04.040(C) (2002). Since Ramm's alleged injuries occurred before the amendments, the 1978 provisions of SMC 4.08.070 control. Thus, the PSCSC still controlled the promotion procedures relevant to this suit. This opinion will refer to the relevant sections as "former," to reflect that the 1978 ordinance was amended.
[2] In order to facilitate the promotion process, Chief Stamper considered recommendations for promotion from the police department's Senior Leadership Team (SLT). CP at 136. The SLT verbally provided information and recommendations to Chief Stamper. Id. The SLT and Chief Stamper also listened to presentations by the candidates' captains about their perceptions of the candidate. CP at 618. Chief Stamper acknowledged that candidates who were better acquainted with him, members of the SLT, or their captains might have a better chance of promotion. CP at 624.
[3] In their cross motion for summary judgment and in their appeal, Ramm, Greeley, and Swank also argued that other provisions of the City's civil service ordinance failed to comply with RCW 41.12.100. CP at 853-55; Ramm's Ct. of App. Br. at 7-9. Those provisions included:

1. Remedy available in disciplinary appeal. SMC 4.08.100.
2. Discovery related to hearings. PSCSC Rule 6.17.
3. Performance test. SMC 4.08.120.
4. Tenure of Commissioners. SMC 4.08.040.
5. Appointment of Secretary and Chief Examiner. PSCSC Rule 2.11.
6. Election of remedies. SMC 4.08.100.
7. Qualification of Commissioners. SMC 4.08.040.
8. Term of Office. SMC 4.08.040.
9. Jurisdiction. SMC 4.08.060.
[4] The court also considered a consolidated appeal brought by Dennis Hossfield, a Seattle police officer, against the City for allegations identical to those made by Ramm. Hossfield's appeal was dismissed due to his failure to appeal the trial court's summary judgment decision within 30 days. Seattle Police Officers Guild, 113 Wash.App. at 440-41, 53 P.3d 1036. He has not petitioned for review of that decision to this court.
[5] The court did not address Ramm's claims that additional provisions of the City's civil service ordinance violated RCW 41.12.010. See supra n. 3. Ramm did not request review of these claims.
[6] The City did not seek review of the Court of Appeals decision that certification of the top 25 percent of the promotional register failed to substantially accomplish the purpose of chapter 41.12 RCW.
[7] Only chapter 41.12 RCW's purpose to provide for promotion on the basis of merit is at issue in this case.
[8] We stated that chapter 41.08 RCW's purposes mirrored those of chapter 41.12 RCW. Local 404, 90 Wash.2d at 831, 586 P.2d 479 (citing Reynolds, 62 Wash.2d at 725, 384 P.2d 819).
[9] In Bellingham Firefighters Local 106, 15 Wash.App. at 666, 551 P.2d 142, cited and quoted with approval by our decision in Local 404, Division One of the Court of Appeals upheld the City of Bellingham's use of the "rule of three" as a valid exercise of its discretion. The Court of Appeals reasoned that "[t]he statute does not mandate compliance with the methods used in the statute; rather, it requires substantial accomplishment of its purpose," and the legislature could have directed municipalities to adopt the "rule of one" when it passed chapter 41.08 RCW. Id. Therefore, it upheld the validity of the "rule of three" because "[t]he statute intended to allow cities and towns a local option as to methods and techniques and as to the many recognized and acceptable methods of setting up a civil service system to substantially accomplish the purpose of civil service." Id.
[10] To illustrate the "rule of three's" widespread acceptance, Ramm notes that the federal government and many states have adopted it for civil service systems. See RCW 41.14.130; 5 U.S.C. § 3318; 15A AM.JUR.2D Civil Service § 25 (2000) (referring to the "rule of three" as the "classic rule of three"); see also N. JOSEPH CAYER, PUBLIC PERSONNEL ADMINISTRATION IN THE UNITED STATES 77 (1975). Therefore, Ramm argues that this court should continue to limit cities to the "rule of three" since the "rule of five" does not enjoy the same level of acceptance in civil service systems.
[11] The dissent claims that no historical support exists to justify city civil service certification procedures that exceed the "rule of three." Dissent at 253. The dissent's argument is not compelling. Although our holding in Local 404 noted that at least two cities employed the "rule of three" at the time the legislature enacted chapter 41.08 RCW, this court's approval of the "rule of three" hinged on our interpretation of the language "substantially accomplish[es] the purpose" in RCW 41.08.010. 90 Wash.2d at 831-32, 586 P.2d 479. We also determined that the "rule of one" was not "of such overriding concern that it is essential under RCW 41.08." Id. at 832, 586 P.2d 479. Like Local 404, our holding today rests on our interpretation of the language "substantially accomplish[es] the purpose," in RCW 41.12.010, and whether the City's certification procedures fail to substantially accomplish the purpose of providing for promotions on the basis of merit. Here, as described in detail above, Ramm has not shown that the City's "rule of five" fails to provide for promotion on merit principles.
[12] The dissent argues that "[t]he City's practice also demonstrates the department's patent willingness to disregard merit." Dissent at 254. In order to support its argument, the dissent makes reference to the City's separate certification of women, Native Americans, Hispanic Americans, and Asian Americans who failed to qualify for certification under the "rule of five" or the "rule of 25 percent." Dissent at 253-54. Ramm, however, has not argued that he was subject to race or gender discrimination as a result of the City's certification procedures. Rather, Ramm has consistently attacked the City's "rule of five" arguing that it fails to meet the requirements of chapter 41.12 RCW because it affords the appointing authority too much discretion when making promotions and thus, fails to provide for promotions on merit principles. Consequently, the dissent's contention that the City improperly certified officers on the basis of race or gender rather than merit principles has no relevance to the issue now before this court.
[13] The legislature also amended chapter 41.12 RCW in 1987, 1993, and 2002. See Laws of 1987, ch. 339, § 2; Laws of 1993, ch. 47, § 5; Laws of 1993, ch. 189, § 1; Laws of 2002, ch. 143, § 1. Critically, at the time the legislature enacted these amendments to chapter 41.12 RCW, at least seven cities had already enacted civil service systems employing the "rule of five." See City of Seattle Ordinance 107791 (1978); City of Port Angeles Ordinance 2887, § 2 (1995); City of Gig Harbor Ordinance 741, § 1 (1996); City of Normandy Park Ordinance 628, § 1 (1996); City of Toppenish Ordinance B-272, § 2 (1983); City of Federal Way Ordinance 96-258, § 2 (1996); City of Tacoma Ordinance 25941, § 2 (1996). By remaining silent and failing to amend chapter 41.12 RCW to prohibit the "rule of five," the legislature "silently acquiesces" to the interpretation of the cities charged with enforcing chapter 41.12 RCW's purpose to provide for promotion on the basis of merit. Bradley v. Dep't of Labor & Indus., 52 Wash.2d 780, 786-87, 329 P.2d 196 (1958); Morin v. Johnson, 49 Wash.2d 275, 279, 300 P.2d 569 (1956). Therefore, the legislature's silent acquiescence to the "rule of five" coupled with the legislature's express approval of certification of "names equal to six more names than there are vacancies to be filled" in RCW 41.06. 150(2), provides further support to our conclusion that the "rule of five" satisfies the purpose of providing for promotions on the basis of merit.
[14] Chapter 41.06 RCW was created by a citizen initiative in 1960. Initiative Measure No. 207 (1960). The initiative initially provided for the "rule of two," which the legislature later changed to the "rule of four" in 1982 and to the current statutory language in 1993. See Laws of 1982, 1st Ex.Sess., ch. 53, § 4; Laws of 1993, ch. 281, § 287. In 2002, the legislature amended RCW 41.06.150(2) to transfer authority to the director of personnel. RCW 41.06.150(2) (effective July 1, 2004). The director of personnel now has authority to enact rules that decide the number of names to certify for promotion, and pursuant to WAC 356-26-060, "shall normally certify to the appointing authority a list of names equal in number to six more than there are vacancies to be filled."
[15] RCW 41.06.010 states:

The general purpose of this chapter is to establish for the state a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan,.... All appointments and promotions to positions, and retention therein, in the state service, shall be made on the basis of policies hereinafter specified.
(Emphasis added.)
[16] The dissent claims that the state civil service provisions, chapter 41.06 RCW, cannot provide any meaningful guidance to our interpretation of RCW 41.12.010 since the provisions necessarily pertain to state agencies. Dissent at 255. The dissent, however, ignores that this court must determine whether the City's "rule of five" "substantially accomplishes" chapter 41.12 RCW's purpose to provide for promotion on the basis of merit. Given that the legislature did not expressly state in RCW 41.12.010 how city civil service systems might substantially accomplish this purpose, it is logical to look to other civil service statutes that purport to have the same purpose, i.e., to provide for promotion of civil service employees on the basis of merit, to determine whether the City's certification procedures accomplish that purpose. This does not, as the dissent maintains "rewrite[] the statute." Dissent at 255. Rather, it effectuates the legislature's intent in RCW 41.12.010 to provide flexibility and discretion to cities when enacting civil service systems, while ensuring that employees receive promotions on the basis of merit. See Local 404, 90 Wash.2d at 831-32, 586 P.2d 479 (holding that the legislature intended to provide flexibility and discretion for cities by use of the word "substantially" in RCW 41.12.010).
[17] The department of personnel appears to interpret RCW 41.06.150(2) as providing a "rule of seven." WASHINGTON STATE DEP'T OF PERSONNEL, WELCOME TO STATE SERVICE 7 (2002), available at http://hr.dop.wa.gov/publications/welcome.pdf.
[18] The dissent also contends that this court's validation of the "rule of five" goes further down the "slippery slope," warned of by Chief Justice Wright in his dissent in Local 404, 90 Wash.2d at 835, 586 P.2d 479. Dissent at 252. However, we do not approve certification procedures that exceed the number that the legislature has determined accomplish the purpose of providing for promotions on the basis of merit. Thus, this opinion does not give cities the freedom to adopt certification systems that wholly ignore legislative limitations.
[19] The dissent properly concedes that Ramm has no viable claim under the "rule of five" since the PSCSC certified individuals eligible for lieutenant vacancies pursuant to the "rule of five" rather than the "25 percent rule." Dissent at 256 n. 7. However, regarding Greeley, the dissent contends that had the PSCSC followed the "rule of five" for the December 1995 certification request to fill 10 sergeant vacancies, "[t]wo of the 10 officers promotedofficers David Unger and Donald MacMillanwould not have been certified under the rule of five." Id. at 249 (citing CP at 478, 486-92, 564). Presumably, the dissent reasons that this demonstrates Greeley would have been more likely to receive a promotion. Even under the "rule of five," however, the dissent acknowledges that the PSCSC still would have certified 14 names in response to the December 1995 request for certification. Id. While Greeley certainly would have been one of the names certified as eligible for promotion under the "rule of five," Chief Stamper always had the discretion to select another of the 13 certified individuals for promotion over Greeley. This same rationale applies to the additional four certification requests that the dissent cites as examples to support its argument. See id. at 248 n. 8. Thus, as noted, absent a claim of discrimination or similar unlawful hiring practices, Greeley will never be able to show that the Chief unlawfully passed him over for promotion under the "rule of five."

Similarly, regarding Swank, the dissent again ignores that Chief Stamper always had discretion to choose someone other than Swank. See id. at 349-350. Like Ramm and Greeley, Swank will never be able to prove that the Chief unlawfully refused to promote him under the "rule of five" because the Chief always had the option to select someone else.
[1] The two other recognized purposes, namely providing tenure to police officers and establishing a commission to administer the civil service system to ensure negative employment decisions were "not made for political or religious reasons," Reynolds, 62 Wash.2d at 725, 384 P.2d 819, are not implicated here.
[2] The City did not seek review of this issue, so it is now the law of the case. See State v. Strauss, 119 Wash.2d 401, 412, 832 P.2d 78 (1992).
[3] Though we examine chapter 41.12 RCW here, the statutes are virtually identical and serve the same purposes. See Local 404, 90 Wash.2d at 831, 586 P.2d 479 (quoting Reynolds v. Kirkland Police Comm'n, 62 Wash.2d 720, 725, 384 P.2d 819 (1963)).
[4] Nor is the majority's "silent acquiescence" argument persuasive. Majority at 249-250 n. 13. At least three citiesSeattle, Issaquah, and Kirklandadopted rules of 25 percent contemporaneously with the statutory amendments to chapter 41.12 RCW cited by the majority. See Seattle Ordinance 107791, § 7(6) (Nov. 6, 1978); Issaquah Ordinance 2056, § 1 (Jan. 17, 1995); Kirkland Ordinance 3405, § 1 (Feb. 15, 1994). If the legislature "silently acquiesce[d]" in those interpretations, the same argument could be made that the rule of 25 percent is equally lawful. But see Seattle Police Officers Guild v. City of Seattle, 113 Wash.App. 431, 439, 53 P.3d 1036 (2002) (rule of 25 percent violates chapter 41.12 RCW). In point of law, however, the legislature has already spoken through statute and it is of no consequence that the legislature did not see fit to amend the statute to "cure" a municipal statutory violation. Rather it is a judicial function to apply the statute and protect legal entitlements arising under the statute. See Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 812, 16 P.3d 583 (2001).
[5] The majority is correct to recognize these affirmative action policies did not specifically adversely affect these petitioners; however the policies are illustrative of the City's willingness to stray from chapter 41.12 RCW's mandate to avoid consideration of anything other than the candidate's "merit, efficiency, and fitness" as evidenced by performance on the civil service exam. RCW 41.12.050(4).
[6] The statutory limitation of the number of names certified for promotion to six expires on July 1, 2004. See LAWS OF 2002, ch. 354, §§ 203, 411. After such time the director of personnel "shall normally certify ... a list of names equal in number to six more than there are vacancies to be filled," subject to some exceptions, none of which apply here. WAC 356-26-060.
[7] The rule of five rather than the unlawful 25 percent rule was used in each of the five certification requests involving Sergeant Dennis Ramm. See CP at 456-60, 462-72. Approval of the rule of five therefore removes any genuine issue of material fact to his case. I would however reverse summary judgment in Ramm's case for the reasons articulated in Part I of this opinion. See supra pp. 245-247.
[8] Chief Stamper requested certification for two sergeant vacancies on July 16, 1996. The PSCSC unlawfully certified 17 names, 11 more than authorized under the rule of five. Officer Greeley was the highest ranked officer on this list. Of the two officers who were promoted, one officer would not have been certified had the PSCSC followed the rule of five. CP at 481, 503-05, 564.

Another instance occurred when Chief Stamper requested certification on August 5, 1997, for three sergeant vacancies. The PSCSC unlawfully certified 14 names, 7 more than authorized under the rule of five. Of the three who were promoted, two officers would not have been certified had the PSCSC followed the rule of five. CP at 483, 509-11, 564.
On November 13, 1996, Chief Stamper again requested certification for 10 sergeant vacancies. The PSCSC unlawfully certified 23 names, 9 more than authorized under the rule of five. The record indicates Chief Stamper only filled nine of the vacancies. Of the nine officers who were promoted, two officers would not have been certified had the PSCSC followed the rule of five. CP at 482, 506-08, 564.
Finally on October 7, 1997, Chief Stamper requested certification for two sergeant vacancies. The PSCSC unlawfully certified 12 names, 6 more than authorized under the rule of five. Of the two officers who were promoted, one officer would not have been certified had the PSCSC followed the rule of five. CP at 484, 512-14, 564.
[9] The first of these two occurrences was on certifications dated May 18, 1999, in which the PSCSC certified 14 names for two vacancies, 7 more than authorized by the rule of five. Chief Stamper promoted two officers, one of whom would not have been certified had the PSCSC followed the rule of five. CP at 524, 544-45, 548, 568. The other instance was on certifications dated January 19, 2000, in which the PSCSC certified 15 names for five vacancies, 6 more than would be authorized by the rule of five. Chief Stamper promoted five officers, one of whom would not have been certified had the PSCSC followed the rule of five. CP at 528, 553-54, 568.
[10] Chief Pirak also testified Hurst "had conflicts with other people, tended to take on the issue, the heat of the moment, sort of the emotionalism of whatever the squad felt versus trying to keep the balance." CP at 691.